575 S.E.2d 83

**CITY OF NEWBERRY, Appellant,**

v.

**NEWBERRY ELECTRIC COOPERATIVE, INC., Respondent.**

**No. 3589.**

Court of Appeals of South Carolina.

Heard Nov. 6, 2002.

Decided Jan. 6, 2003.

Robert T. Bockman, of Columbia; and Eugene C. Griffith, Jr., of Newberry, for appellant.

Thomas H. Pope, III, of Pope and Hudgens, of Newberry, for respondent.

SHULER, J.:

The City of Newberry appeals a trial court order denying its request for an injunction barring Newberry Electric Cooperative, Inc., from providing electric service to an annexed

area. On en banc rehearing, we adhere to the original decision of the three-judge panel, republished herein, and reverse and remand.

## FACTS/PROCEDURAL HISTORY

In February 1974, the City of Newberry annexed approximately 21.37 acres near state Highway 219 into its corporate limits. The area had been assigned in 1971 to the Newberry Electric Cooperative exclusively by the Public Service Commission (PSC) pursuant to the Territorial Assignment Act. Prior to 1991, however, the Cooperative never provided electric service to any customers in the area.

In 1999, construction began on a Burger King located in the annexed area. During construction, the City provided temporary electric service. As the restaurant neared completion, Roger Skeen, a co-owner, requested electric service from the Cooperative. Skeen, who previously had operated a Burger King within the city limits, knew the City's electric rates were approximately 40% higher than the Cooperative's.

In August 1999, a line supervisor informed Charles Guerry, the City's Utilities Director, that the Cooperative was attempting to connect service. Guerry visited the construction site and advised the Cooperative to stop the connection because the area was inside municipal limits. The Cooperative ignored Guerry's instruction and continued to connect service by dropping a line from one of its distribution poles that had been on the site for more than forty years.

The City brought this action in November 1999 seeking an order enjoining the Cooperative from furnishing electric power to the Burger King. The Cooperative answered and counterclaimed for, inter alia, a judgment declaring it legally entitled to provide service. On November 30, 2000, the trial court held a hearing. Relying on stipulated facts,[1] documenta-

---

**1.** The relevant stipulated facts include: 1) the City annexed the area in 1974, 2) the PSC assigned the area to the Cooperative prior to annexation, 3) the City population estimate at the time was 10,542, 4) the Cooperative served no customers within the area prior to Burger King, 5) the City never consented to service by the Cooperative, 6) the Cooperative moved no poles prior to beginning service, and 7) the

ry evidence, and oral testimony, the court denied the City's request for an injunction and instead issued a declaratory judgment finding the Cooperative had a legal right to supply electric service to the Burger King. This appeal followed.

## LAW/ANALYSIS

■ The material facts of this case, agreed to by written stipulation, are undisputed. As a result, this Court will review "whether the trial court properly applied the law to those facts." *WDW Props. v. City of Sumter*, 342 S.C. 6, 10, 535 S.E.2d 631, 632 (2000); *see Duke Power Co. v. Laurens Elec. Co-op., Inc.*, 344 S.C. 101, 543 S.E.2d 560 (Ct.App.2001).

■ The City argues the trial court erred in finding the Cooperative could lawfully provide electric service to Burger King without the City's consent. We agree.

■ The Legislature enacted the Rural Electric Cooperative Act (RECA) "for the purpose of supplying electric energy and promoting and extending the use thereof in rural areas." S.C.Code Ann. § 33–49–210 (1990). As creatures of statute, rural electric cooperatives "only have such authority as the [L]egislature has given them." *Duke Power*, 344 S.C. at 104, 543 S.E.2d at 562. The RECA grants cooperatives the authority to supply electric energy only in rural areas, i.e., areas with populations less than 2,500 persons. *See* S.C.Code Ann. § 33–49–250(1) (1990); *Carolina Power & Light Co. v. Town of Pageland*, 321 S.C. 538, 471 S.E.2d 137 (1996). The City of Newberry, with a population over 10,000 residents, is nonrural.

The RECA, however, also "provides two exceptions permitting a rural co-op to serve customers within a nonrural area...." *Duke Power*, 344 S.C. at 105, 543 S.E.2d at 562; *see Carolina Power*, 321 S.C. at 542, 471 S.E.2d at 139 (stating § 33–49–250(1) was amended in 1963 to provide "two exceptions" to the requirement that cooperatives serve only rural areas). These exceptions, the annexation exception and the principal supplier exception, are found in the following language from the RECA:

---

Cooperative maintained the poles and lines used to provide service both before and after annexation.

*[T]he act of incorporating or annexing into a city or town an area in which the cooperative is serving shall constitute the consent of the governing body of such city or town for the cooperative to continue serving all premises then being served and to serve additional premises within such area until such time as the governing body of the city or town shall direct otherwise* and such cooperative is empowered to so serve, but it shall not extend service to any premises in any other part of such city or town *unless the cooperative was the principal supplier of electricity in such city or town* . . . .

§ 33–49–250(1) (emphasis added); *see Duke Power,* 344 S.C. at 105, 543 S.E.2d at 562.

■ The purpose of the exceptions is to "prevent the ouster of co-ops from areas they have historically served due to population growth or annexation." *Duke Power,* 344 S.C. at 105, 543 S.E.2d at 562. The statutory language, therefore, "contemplate[s] [a] co-op's continued service" in an area to which an exception applies. *Id.* Neither party herein contends the Cooperative was the principal supplier of electricity in the annexed area. Accordingly, our sole concern is the application of the annexation exception.

The trial court found Burger King had the option to choose either the City or the Cooperative as its electric service provider. The court based the finding on its interpretation of S.C.Code Ann. § 58–27–670 (Supp.2001) because, in supplying power to the Burger King, the Cooperative merely "dropped a line" and did not use the City's "streets, alleys or other public ways."[2] Section 58–27–670 provides:

The furnishing of electric service in any area which becomes a part of any municipality after the effective date of this section, either by annexation or incorporation, whether or not the area, or any portion of the area has been assigned pursuant to § 58–27–640, is subject to the provisions of §§ 58–27–1360 and 33–49–250, and any provisions of this article. *No poles, wires, or other facilities of electric suppliers using the streets, alleys, or other public ways within the corporate limits of a municipality may be constructed*

---

**2.** The parties agreed the Cooperative did not use the streets, alleys, or public ways of the City in providing electric service to Burger King.

*by an electric supplier unless the consent of the municipal
governing body is first obtained.* Annexation may not be
construed to increase, decrease, or affect any other right or
responsibility a municipality, rural electric cooperative, or
electrical utility may have with regard to supplying electric
service in areas assigned by the Public Service Commission
in accordance with Chapter 27 of Title 58.

§ 58–27–670 (emphasis added).[3]

The statute, therefore, declares that any electric service
provider annexed or incorporated into a municipality after
June 6, 1984, the date of enactment, must obtain the munici-
pality's consent before using the "streets, alleys, or other
public ways" to erect poles, wires or other business facilities.
In reaching its conclusion, the trial court apparently employed
reverse logic to find that the statute also inferentially permit-
ted an annexed electric service supplier to provide new service
without consent if it refrained from using the municipality's
public property. This was error.

Initially, we note § 58–27–670 by its own terms is inapplica-
ble under the facts of this case because the City annexed the
area in question in 1974, a full ten years prior to the date of
enactment. *See City of Westminster v. Blue Ridge Elec.
Coop.*, 295 S.C. 93, 97, 366 S.E.2d 611, 613 (Ct.App.1988)
("[T]he Legislature intended the amended provisions of Sec-
tions 58–27–670 and 58–27–1360 to apply to areas annexed or
incorporated after the effective date of the amendments (i.e.
June 6, 1984)."). Moreover, our supreme court has interpret-
ed § 58–27–670 to mean that a rural electric cooperative
possessing a valid PSC territorial assignment to serve an area
subsequently annexed is "permitted to *continue service* in that
area to those premises being served as of the date of the
annexation or incorporation," but "prohibited, without prior
consent of the municipality, from *extending or expanding*
service in that area by the use of any streets, alleys, public
property or public ways after the date of annexation or

---

**3.** S.C.Code Ann. § 33–49–250 (1990) enumerates the powers of rural
electric cooperatives, while S.C.Code Ann. § 58–27–1360 (Supp. 2001)
permits, upon payment of just compensation, the ouster of an annexed
or incorporated electric supplier whom the municipality determines is
providing "inadequate, undependable, or unreasonably discriminatory"
service.

incorporation." *City of Abbeville v. Aiken Elec. Coop.*, 287 S.C. 361, 370–71, 338 S.E.2d 831, 836 (1985) (emphasis added).

Finally, § 58–27–670 expressly states it is subject to the terms of § 33–49–250, which clearly limit a cooperative's ability to provide service in an annexed or incorporated area without the municipality's express consent. The plain language of the annexation exception contained in § 33–49–250(1) provides that the act of annexation or incorporation by a municipality constitutes its implied consent for a cooperative "to continue serving all premises then being served...." Thus, if a cooperative is serving *existing* customers, it has a statutory right to continue serving them even after annexation. *See* § 33–49–250(1); *Carolina Power*, 321 S.C. at 543, 471 S.E.2d at 140 ("[T]he intent of the [L]egislature in adopting the annexation exception was to permit co-ops to continue to serve existing customers and not require ouster of a co-op due solely to a city's annexation."). The Cooperative admits it had no customers in the annexed area prior to Burger King; hence, it does not fall within the category of cooperatives afforded the City's implied consent. *See* § 33–49–250(1); *Duke Power*, 344 S.C. at 106, 543 S.E.2d at 563 (noting that where a cooperative is not serving any customers at the time of annexation a decision barring it from serving the annexed area does not result in an impermissible ouster).

Furthermore, although the annexation exception also implies consent for cooperatives to serve "additional premises," i.e., new customers, within an annexed area, the statute expressly limits a cooperative's authority to provide new or increased service by allowing it only "until such time as the governing body of the city or town shall direct otherwise...." § 33–49–250(1). As the parties stipulated the City never consented to service by the Cooperative, and the record reflects the City in fact "direct[ed] otherwise" when Charles Guerry informed the Cooperative it needed to stop the installation of new service, this aspect of the annexation exception is similarly unavailing to the Cooperative.

For the foregoing reasons, we hold § 58–27–670 was an inappropriate basis for the trial court's ruling. The trial court erred in finding the Cooperative was authorized to provide electric service to the Burger King in the absence of the City's

consent. Accordingly, we reverse the court's declaratory judgment in the Cooperative's favor, and remand for entry of an order enjoining the Cooperative from providing such service.

**REVERSED and REMANDED.**

HEARN, C.J., CURETON, GOOLSBY, CONNOR, ANDERSON, HUFF, STILWELL, and HOWARD, JJ., concur.