643 S.E.2d 687

**CITY OF CAMDEN, Respondent,**

v.

**FAIRFIELD ELECTRIC COOPERATIVE, INC., Appellant,**

and

**Lowe's Home Centers Of Camden, South Carolina, Intervenor, Appellant.**

No. 26298.

Supreme Court of South Carolina.

Heard Jan. 30, 2007.

Decided April 2, 2007.

544

Marcus A. Manos and Manton M. Grier, Jr., both of Nexsen Pruet LLC, of Columbia, for Primary Appellant Fairfield Electric Cooperative.

Thomas H. Pope, III, of Newberry, for Secondary Appellant Lowe's Home Centers.

James M. Brailsford, III, of Edisto Island, for Respondent.

Justice WALLER:

This is an appeal from an order of the circuit court granting the City of Camden summary judgment and holding that Fairfield Electric Cooperative, Inc. has no legal authority to provide electric service to a newly constructed Lowe's Store located in an area recently annexed by city. We affirm.

## FACTS

This case involves a 12.981 acre tract of land, originally located just outside the city limits of Camden, SC, which was owned by Town and Country, Inc. In early 2002, Town and Country began negotiating to sell the property to Lowe's for construction of a Lowe's store. In the summer of 2002, Town and Country requested Fairfield Electric Cooperative to install a security light on the property.[1] Fairfield installed the security light on July 29, 2002. Thereafter, on September 10, 2002, Town and Country requested the City annex the property.

On September 3, 2002, prior to purchasing the property, Lowe's wrote a letter to Town and Country, indicating that it

---

1. At the time, Fairfield had a distribution line which crossed the property, and the city of Camden had a sewer easement.

had chosen Fairfield as its electric supplier for the proposed store in the "unassigned" area. Fairfield notified the City of this letter, and indicated it had been serving the premises and would "honor their request to serve this new store." On September 23, 2002, Camden's City Manager responded that Camden would not give Fairfield permission to serve any new customers in the current City limits, or any area which might be annexed in the future, stating, "[w]hen the site on which Lowe's proposes to build its new store becomes a part of the City, the City Council will assert its legal right to be the power provider, regardless of the customer's preference."

Camden annexed the property on October 8, 2002. Town and Country thereafter sold the parcel to Lowe's on January 6, 2003, and Lowe's began to clear and grade the tract to begin construction of the store. Both the security light placed on the property by Fairfield Electric and the City's sewer easement were temporarily disconnected during construction. After completion of construction, Fairfield continued to provide the new Lowe's store with electricity, and the City of Camden brought this action pursuant to S.C.Code Ann. § 33–49–250(1) for an order compelling Fairfield to cease and desist. The circuit court ruled Fairfield had no legal authority to provide electricity to the new Lowe's store. Fairfield appeals.

## ISSUE

Did the circuit court err in ruling Fairfield was without authority to service the new Lowe's store?

## DISCUSSION

■ Pursuant to S.C.Code Ann. § 33–29–240, a rural electric cooperative generally has the power to sell and distribute electricity only in rural areas, i.e., those with a population under 2500. *Carolina Power and Light v. Town of Pageland*, 321 S.C. 538, 471 S.E.2d 137 (1996). There are two exceptions to this rule contained in South Carolina Code Ann. § 33–49–250(1), to wit:

1) a city's act of incorporating or annexing into a city or town an area in which the cooperative is serving shall constitute the consent of the governing body of such city or

town for the cooperative to **continue serving all premises then being served** and to serve additional premises within such area until such time as the governing body of the city or town shall direct otherwise, and

2) the right of a cooperative to continue to serve in a city or town in which it is the principal supplier of electricity shall not be affected by the subsequent growth of such town beyond a population of two thousand five hundred persons.

(emphasis supplied). The purpose of the exceptions is to "prevent the ouster of co-ops from areas they have historically served due to population growth or annexation." *Duke Power Co. v. Laurens Elec. Co-op., Inc.*, 344 S.C. 101, 105, 543 S.E.2d 560, 562 (Ct.App.2000).

 It is undisputed here that the second exception does not apply as Fairfield is not the principal supplier of the disputed area. Accordingly, the sole issue before us is whether the Lowe's store was a "premises then being served" at the time of annexation so as to come within the first exception. We find that it does not.

The term "premises" is not defined in S.C.Code Ann. § 33–49–10 et seq., the Electric Cooperative Act. The circuit court therefore looked to the definition of "premises" contained in S.C.Code Ann. § 58–27–610(2) of the Territorial Assignments Act of 1969. That section defines "premises" as follows:

the building, structure or facility to which electricity is being or is to be furnished; provided, that two or more buildings, structures or facilities which are located on one tract or contiguous tracts of land and are utilized by one electric consumer for farming, business, commercial, industrial, institutional or governmental purposes, shall together constitute one "premises," except that any such building, structure or facility shall not, together with any other building, structure or facility, constitute one "premises" if the electric service to it is separately metered and the charges for such service are calculated independently of charges for service to any other building, structure or facility.

The circuit court ruled the security light placed on the unimproved lot owned by Town and Country did not constitute a "building, structure or facility" to which electricity was being

furnished, such that it was not a "premises then being served" pursuant to the statute and therefore did not come within this exception. Fairfield asserts the circuit court's reliance upon this definition of "premise" is misplaced inasmuch as the Territorial Assignments Act was enacted some six years after passage of the Electric Cooperative Act. Accordingly, it contends the Legislature could not have intended for this definition of "premises" to apply in the context of § 33–49–250(1). We disagree. We find the circuit court properly looked to the definition of "premises" as set forth in § 58–27–610(2), and the court properly applied that definition.

■ There is a presumption that the legislature has knowledge of previous legislation when later statutes are enacted concerning related subjects. *State v. McKnight*, 352 S.C. 635, 648, 576 S.E.2d 168, 174 (2003); *Berkebile v. Outen*, 311 S.C. 50, 426 S.E.2d 760 (1993). Accordingly, the Legislature is presumed to have had knowledge of the definition of "premises" contained in § 58–67–210.[2]

Fairfield contends the trial court's holding will effectively require continuous ownership of a premises, and prohibit cooperatives from serving premises they have historically served when those premises changes ownership. We disagree with this contention.

■ As noted in *City of Newberry*, "although the annexation exception also implies consent for cooperatives to serve additional premises, i.e., new customers, within an annexed area, the statute expressly limits a cooperative's authority to provide new or increased service by allowing it only until such time as the governing body of the city or town shall direct otherwise. . . ." 352 S.C. at 576, 575 S.E.2d at 86. It is clear that a co-operative may continue serving customers due to a

---

2. S.C.Code Ann. § 33–49–250(1) was rewritten by 2004 Act No. 179, § 5, effective February 19, 2004 and now provides that an electric cooperative has power to:

> to generate, manufacture, purchase, acquire, accumulate, and transmit electric energy and to distribute, sell, supply, and dispose of electric energy to ... persons ... provided that the premises to be served must be located in an area a cooperative is permitted to serve pursuant to Section 58–27–610 through Section 58–27–670.

Section 58–27–610 is the section of the Electric Cooperative Act which specifically defines "premises."

change in ownership; the statute merely requires the coop to be serving a building, structure, or facility at the time of annexation.

Finally, we decline to hold that the security light placed by Town and Country is a "structure" within the contemplation of § 33–49–250. Such a holding would allow cooperative providers to effectively circumvent the statutory scheme set up by the Legislature simply by placing security lights in any areas in which it has distribution lines. Such a result is untenable. Accordingly, we affirm the circuit court's ruling that Fairfield Electric Cooperative is without authority to serve the recently annexed Lowe's property.

**AFFIRMED.**

TOAL, C.J., MOORE, BURNETT and PLEICONES, JJ., concur.