692 S.E.2d 510

**CITY OF NEWBERRY, Petitioner,**

v.

**NEWBERRY ELECTRIC COOPERATIVE, INC., and Wal–Mart Stores East, L.P., and Wal–Mart Real Estate Business Trust, Respondents.**

**No. 26795.**

Supreme Court of South Carolina.

Heard Nov. 3, 2009.

Decided April 5, 2010.

Rehearing Denied May 14, 2010.

Robert T. Bockman, of McNair Law Firm, of Columbia, for Petitioner.

Frank R. Ellerbe, III and Bonnie D. Shealy, both of Robinson, McFadden & Moore, of Columbia; Thomas H. Pope, III and Kyle B. Parker, both of Pope and Hudgens, of Newberry, for Respondents.

James M. Brailsford, III, of Edisto Island, for Amicus Curiae Municipal Association of South Carolina and the South Carolina Association of Municipal Power Systems.

Chief Justice TOAL.

In this case, we granted a writ of certiorari to review the court of appeals' decision holding that the Newberry Electric Cooperative, Inc. (Cooperative) could provide electric service to an area annexed by the City of Newberry (City). We reverse and remand.

## FACTS/PROCEDURAL BACKGROUND

This case concerns which electric provider, the City or the Cooperative, has the legal right to provide service to approximately 26 acres of land. When Wal–Mart began negotiations to construct a store on this site, the area was assigned to the Cooperative by the Public Service Commission (PSC), but the Cooperative was not providing services to any premises in the area. Wal–Mart wished for its property to be annexed into the City, but, nonetheless, wanted to obtain its electric services from the Cooperative.

In May 1999, the Cooperative initiated a suit in the PSC to enjoin the City from annexing the site and providing electric services. On June 21, 1999, the Cooperative and Wal–Mart entered into agreements for Wal–Mart to purchase its service from the Cooperative. The following day, the Cooperative voluntarily dismissed its case with the PSC as moot because of the service contracts; the City agreed to the dismissal. On July 27, 1999, the City annexed the property.

In January 2000, the Cooperative began supplying electric services for the construction site. In June 2000, the Cooperative began supplying electric services to the completed Wal–Mart store. The City did not object to this provision of services until January 2003. On June 2, 2003, the City filed the summons and complaint that initiated this action, seeking declaratory relief, an injunction, and damages.

The circuit court made several findings: (1) the statute of limitations barred the City's claim, (2) the City consented to the Cooperative's service, and (3) several equitable principles also proscribed the City's requested remedies. The court of appeals affirmed, holding that the Cooperative had the right to continue serving the property because it had a contract with Wal–Mart to provide electricity and the City's suit was barred by the statute of limitations. *City of Newberry v. Newberry Elec. Coop., Inc.,* Op. No. 2008–UP–200 (S.C. Ct.App. filed Mar. 24, 2008).

## STANDARD OF REVIEW

Statutory interpretation is a question of law. *Bryant v. State,* 384 S.C. 525, 683 S.E.2d 280, 282 (2009). The cardinal rule of statutory construction is to ascertain and give

effect to the intent of the legislature. *Id.* (citing *Mid–State Auto Auction of Lexington, Inc. v. Altman,* 324 S.C. 65, 69, 476 S.E.2d 690, 692 (1996)).

## ANALYSIS

## I. Right to Provide Electric Service

### A. Section 33–49–250

■ The City argues that once it annexed the property, it had the sole right to provide electric service to the property, and any service provided by the Cooperative was unlawful. We agree.

The Cooperative is purely a creature of statute, and so has only such authority as the legislature has granted it under the Electric Cooperative Act, S.C.Code Ann. §§ 33–49–10, *et. seq.* (2006 & Supp. 2008). *See S.C. Elec. & Gas Co. v. Pub. Serv. Comm'n,* 275 S.C. 487, 489, 272 S.E.2d 793, 794 (1980) (stating that "regulatory bodies are possessed of only those powers which are specifically delineated").

The Electric Cooperative Act provides that an electric cooperative has the authority to provide electricity only in rural areas. S.C.Code Ann. § 33–49–250. Section 33–49–250 provides two exceptions: the "annexation exception" and the "principal supplier" exception. The annexation exception states that if a cooperative is providing electricity to premises in an area that is later annexed by a municipality, that cooperative may "continue serving all premises then being served." S.C.Code Ann. § 33–49–250(1). The principal supplier exception states that if a cooperative is serving a city or town of less than 2,500 persons, it will continue to have the right to serve that area even if the population later exceeds 2,500 persons. *Id.*

Neither of these exceptions applies here. Although the area had been assigned to the Cooperative, the Cooperative was not providing electric service to any premises in that area prior to the annexation.[1] Thus, the Cooperative does not have the right under the statutes to serve the Wal–Mart premises.

---

1. The parties argue only the annexation exception; the principal supplier exception is not at issue in this case.

## B. Contract for Services

■ The Cooperative contends, and the court of appeals held, that its service contract with Wal–Mart entitles it to continue providing service after annexation. We disagree.

In *City of Camden v. Fairfield Electric Cooperative, Inc.*, this Court held that a cooperative did not have the right to serve the premises post-annexation when the cooperative was not providing service to any premises pre-annexation. 372 S.C. 543, 643 S.E.2d 687 (2007). In *City of Camden*, Lowe's was planning to build a store in an unassigned area and had chosen Fairfield Electric Cooperative (Fairfield) as its supplier. However, the City of Camden annexed the property, and at the time of annexation, Fairfield was furnishing electric service only to a security light on the unimproved lot. This Court held that the statutes require a cooperative to be serving electricity to a "premises" prior to annexation, and that a security light is not a "premises" as defined in S.C.Code Ann. § 58–27–610(2).[2] This Court determined that a security light was not a structure within the contemplation of the annexation exception of section 33–49–250. Because Fairfield could not satisfy one of the statutory exceptions, this Court held that it had no legal right to serve the annexed property.

Here, the court of appeals determined that *City of Camden* is not controlling because: (1) the property was unassigned in that case, whereas the property in the instant case was assigned, and (2) Lowe's had merely selected Fairfield for its future service, but in this case Wal–Mart and the Cooperative entered into a contract for services.

The court of appeals incorrectly distinguished *City of Camden*, which is controlling here. First, the fact of assignment is irrelevant to the present analysis. Clearly, pre-annexation the Cooperative had the legal right to serve the area. However, after annexation the Cooperative could only provide service if it met one of the two explicit exceptions in section 33–49–250, which it did not.

Second, contrary to the court of appeals' conclusion, a contract to provide services to a building that will exist

---

2. This section defines a "premises" as a "building, structure or facility."

sometime in the future does not function as "existing service" under the statutes to trigger the annexation exception. Section 33–49–250 clearly requires existing electrical service to existing premises at the time of annexation. The plain language of the statute simply does not allow the result reached by the court of appeals.

Notwithstanding the clear language of the section 33–49–250, the court of appeals determined section 58–27–670(1)[3] "precludes the City from interfering with an existing contract for services." This analysis is incorrect. In *City of Camden*, this Court was concerned that allowing Fairfield to provide service to the annexed area would "allow cooperative providers to effectively circumvent the statutory scheme set up by the Legislature simply by placing security lights in any areas in which it has distribution lines." 372 S.C. at 549, 643 S.E.2d at 690. If we followed the court of appeals' analysis, we would be allowing cooperatives to simply contract around a municipality's post-annexation rights as established by the Legislature, a situation very similar to the one we aimed to avoid in *City of Camden*. Thus, we reiterate our central holding in *City of Camden* that a cooperative must be providing existing electrical services to an existing premises prior to annexation to continue serving that premises after annexation. Otherwise, the cooperative does not satisfy the annexation exception.

In this case, the Cooperative only had a contract for services and was not actually providing electricity to the completed premises at the time of annexation. Therefore, we hold the City has the legal right to serve the annexed area because the Cooperative was not providing service to existing premises at the time of annexation.

## II. Statute of Limitations

■ The court of appeals held the three year statute of limitations found in S.C.Code Ann. § 15–3–530 applies to this

---

3. This section provides:

Annexation may not be construed to increase, decrease, or affect any other right or responsibility a municipality, electric cooperative, or electric utility may have with regard to supplying electric service in areas assigned by the Public Service Commission in accordance with Chapter 27 of Title 58.

S.C.Code Ann. § 58–27–670(1) (Supp.2007).

action, and the statute began running when the City annexed the property. To the extent a statute of limitations applies here, we find it did not begin running until the Cooperative began providing service to the completed store.

To hold otherwise, as the dissent urges, would mark a departure from our current jurisprudence. We have repeatedly held that a statute of limitations begins to run when the party either knew or should have known that some legal right had been invaded. *See Epstein v. Brown,* 363 S.C. 372, 376, 610 S.E.2d 816, 818 (2005) (stating a statute of limitations begins to run when a party through the exercise of reasonable diligence would be put on notice that a legal right had been invaded); *Dean v. Ruscon Corp.,* 321 S.C. 360, 363, 468 S.E.2d 645, 647 (1996) ("The statute runs from the date the injured party either knows or should have known by the exercise of reasonable diligence that a cause of action arises from the wrongful conduct."); *Johnston v. Bowen,* 313 S.C. 61, 64, 437 S.E.2d 45, 47 (1993) ("[T]he injured party must act with some promptness where facts and circumstances of the injury would put a person of common knowledge and experience on notice that some right of his had been invaded or that some claim against another party might exist.").

The dissent concedes the Cooperative was not serving Wal-Mart when the premises were annexed. Nevertheless, the dissent would hold that at the time of annexation, the City was on notice that the Cooperative "had taken steps to invade the rights of the City." Such a holding would turn our jurisprudence on its head, requiring parties to bring suit to defend rights that had not yet been invaded and ask the courts to intervene when injurious conduct is merely threatened and has not yet occurred.

Here, the City's exclusive right to provide electricity to the annexed premises was not invaded until the Cooperative exceeded its statutory grant of authority and began serving the premises. Thus, the City suffered no injury before that date and could not have brought suit. Therefore, the City's suit is not barred by the statute of limitations.

## CONCLUSION

For the foregoing reasons, we reverse the court of appeals.

WALLER, PLEICONES and BEATTY, JJ., concur.

KITTREDGE, J., dissenting in a separate opinion.

Justice KITTREDGE, dissenting.

I respectfully dissent. The City of Newberry annexed the property in question (the Wal–Mart property) on July 27, 1999. I agree with the majority that because Newberry Electric Cooperative was not serving the Wal–Mart property on the date of annexation, the City of Newberry had the exclusive statutory right to provide electric service to the property. In my judgment, the City lost its right to provide electric service by failing to assert its claim within the statutory period of limitations. Based on the facts and circumstances presented, the three-year statute of limitations began on July 27, 1999. The City commenced this action on June 2, 2003. Because I believe the City of Newberry filed this action beyond the statute of limitations, I vote to affirm the court of appeals decision in result.

I agree with the majority in its analysis of South Carolina Code section 33–49–250. The annexation exception portion of the statute only allows a cooperative that "is serving" an area to continue serving that area after annexation. The majority's interpretation is in accord with the clear and unambiguous terms of the statute and is consistent with our holding in *City of Camden v. Fairfield Electric Cooperative, Inc.*, 372 S.C. 543, 643 S.E.2d 687 (2007). I additionally agree with the majority that the fact that the area was assigned to the Cooperative has no bearing on the applicability of the annexation exception.

Nonetheless, I believe the three-year statute of limitations bars the City's claim against the Cooperative. Statutes of limitations are not simply technicalities; rather, they have long been respected as fundamental to a well-ordered judicial system. *Moates v. Bobb*, 322 S.C. 172, 176, 470 S.E.2d 402, 404 (Ct.App.1996). Statutes of limitations embody important public policy considerations in that they stimulate activity, punish negligence, and promote repose by giving security and stability to human affairs. *Anonymous Taxpayer v. S.C. Dep't of Revenue*, 377 S.C. 425, 438, 661 S.E.2d 73, 80 (2008).

As the court of appeals recognized, the City relied on the applicable statutes for its exclusive right to provide electric service to Wal–Mart. Under South Carolina Code section 15–3–530(2), a party must assert "an action upon a liability created by a statute" within three years. Under the discovery rule, the statute of limitations begins to run from the date the injured party either knows or should know, by the exercise of reasonable diligence, that a cause of action exists for the wrongful conduct. *Epstein v. Brown*, 363 S.C. 372, 376, 610 S.E.2d 816, 818 (2005). The exercise of reasonable diligence means simply that an injured party must act with some promptness where the facts and circumstances of an injury would put a person of common knowledge and experience on notice that some right of his has been invaded or that some claim against another party might exist. *Id.*

In this case, it became common knowledge in late 1998 and early 1999 that Wal–Mart intended to build a new store on the property and that the Cooperative and the City both wanted to provide electric service to the future structure. On May 28, 1999, the Cooperative filed a complaint with the Public Service Commission (PSC) seeking an injunction prohibiting the City from providing electric service to the Wal–Mart site. On June 11, the PSC issued a cease and desist order against the City, thereby prohibiting it from attempting to supply the site with service until a hearing on the merits could be held.

On June 18, the Cooperative initiated an action in the circuit court seeking an injunction prohibiting the City from annexing the Wal–Mart property and prohibiting the City from requiring Wal–Mart to choose the City as the service provider as a condition for receiving other municipal services. This action was later dismissed by consent of the parties.

On June 21, 1999, the Cooperative and Wal–Mart entered into a contract in which the Cooperative agreed to provide Wal–Mart electric service. In accordance with the June 21 service contract, the Cooperative began clearing land and relocating electric poles and power lines. The following day, lawyers on behalf of the Cooperative and the City mailed a letter to the PSC on behalf of the Cooperative and the City informing it that "[t]he issues raised in the Petition and Complaint in the above matter have been resolved, and this

matter is now moot." The Cooperative and the City submitted a proposed consent order of dismissal signed by counsel for the parties. The order of dismissal was signed by the PSC and filed on August 4, 1999.

On July 26, 1999, the developer sent a letter to the City stating that it intended to select the City as the electric service provider for areas surrounding the Wal–Mart store. Significantly, however, the developer specifically stated, "please bear in mind that this letter should not be construed to include the Wal–Mart store . . . as a part of the contract for electric service."

The next day, on July 27, 1999, the City annexed the entire property. The City knew on the annexation date that the Cooperative had not begun furnishing electric service to any premises on the property.

In my view, on July 27, 1999, the date of annexation, the City was on notice that it had the exclusive right to provide electric service to the Wal–Mart property. The City knew or should have known the Cooperative could not avail itself of the annexation exception, yet the City knew of the Cooperative's very visible efforts to promptly move forward with its plan to provide electric service to the annexed property. Therefore, under these facts and circumstances, on the date of annexation, the City was on notice that the Cooperative had taken steps to invade the rights of the City. Accordingly, I would hold that the statute of limitations began to run on July 27, 1999.

The City argues it first discovered it had a claim against the Cooperative on January 6, 2003, the day the court of appeals issued its opinion in *City of Newberry v. Newberry Electric Cooperative, Inc.*, 352 S.C. 570, 575 S.E.2d 83 (Ct.App.2003) (commonly referred to as the *"Burger King"* case). In essence, the City asserts it discovered its rights in the *Burger King* decision.

I reject the City's position for two, independent reasons. First, the City's right to provide electricity is not dependent on the holding of *Burger King*. Because the Cooperative was not "serving" Wal–Mart on the date of annexation, the City's exclusive right to serve the Wal–Mart property was established pursuant to the statutory scheme. This Court's 2007

opinion in *City of Camden v. Fairfield Electric Cooperative,* as the majority compellingly demonstrates, confirmed existing law and did not mark a departure from it. Second, the discovery rule may be invoked to delay the commencement of a statute of limitations based on the discovery of facts, not the discovery of law. *See Burgess v. American Cancer Soc'y., S.C. Div., Inc.,* 300 S.C. 182, 386 S.E.2d 798 (Ct.App.1989) (observing that under the discovery rule, the statute of limitations begins to run when "such facts as would have led to the knowledge" of a potential claim).[4]

Furthermore, the City's complaint in this matter also shows that it was well aware of its rights at the time of annexation. In its complaint, the City alleges the Cooperative could not look to the annexation exception as a source for authority to provide service because the Cooperative was not providing service to the Wal–Mart property at the time of annexation. In fact, the City argued "the Cooperative was aware that annexation would preclude its authority to provide electric service" in its brief to the trial court. Additionally, in its reply to the Cooperative's counterclaim, the City specifically averred that "upon annexation, [the Cooperative] lost its statutory authority to enter and agree to a contract to provide electric service to Wal–Mart under the law of South Carolina. Further responding the City would show that *upon its annexation it acquired the exclusive rights* to provide electric service to the subject tract on which Wal–Mart is located." (emphasis added).

---

**4.** Misinterpretation of the law does not toll the statute of limitations. On June 21, 1999, Charles Guerry, the Utility Director for the City, executed an affidavit in which he stated the City was not requiring Wal–Mart to accept electric service as a condition for receiving other municipal services, and that "it is the City's position that annexation of the property would enable Wal–Mart to select the City as its electric service provider." Although the position that Wal–Mart had a right to choose its provider was contrary to the law, the City's erroneous position has no bearing on the statute of limitations. *See* 54 C.J.S. Limitations of Actions § 116 (2009) ("Mere ignorance of the existence of a cause of action ... generally does not prevent the running of a statute of limitations."); *Miller v. Pac. Shore Funding,* 224 F.Supp.2d 977, 986 (D.Md.2002) (recognizing that "[t]he discovery rule, in other words, applies to discovery of facts, not to discovery of law. Knowledge of the law is presumed.").

In my view, the City's assertions in the pleadings show that it was aware of all of the necessary facts at the time of annexation. I would reject the City's transparent attempt to delay the start of the statute of limitations until its purported discovery of the law. *See Epstein*, 363 S.C. at 376, 610 S.E.2d at 818 (noting that the statute begins to run at the point of discovery of facts and not when advice of counsel is sought or a full-blown theory of recovery is developed).

In my judgment, effective July 27, 1999, the City had three years to assert its right to provide electrical service to the Wal–Mart property. Having failed to do so, the City's action is time barred. I vote to affirm the court of appeals in result.